[Cite as *State v. Nash*, 2013-Ohio-1346.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 98658

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TIMOTHY NASH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-553521

**BEFORE:**   Jones, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   April 4, 2013

**FOR APPELLANT**

Timothy M. Nash, pro se
Inmate #631-040
Richland Correctional Institution
P.O. Box 8107
Mansfield, Ohio 44901


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Erica Barnhill
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Timothy Nash, appeals his convictions for breaking and entering, grand theft, vandalism, and possessing criminal tools. We affirm his convictions but remand the case for a hearing on restitution.

{¶2} In 2011, Nash was charged with one count each of the above-mentioned crimes. The case proceeded to a jury trial in March 2012, at which Nash represented himself. The following pertinent evidence was adduced at trial.

{¶3} On August 13, 2011, Cleveland Police responded to a call for a possible break-in on George Avenue. The police discovered that a large electrical transformer was missing from a fenced-in area owned by the Cleveland Electric Illuminating Company ("CEI") and noted tire marks, "drag marks," and a trail of oil leading out of the area toward the road. The police followed the trail of oil for approximately two blocks and saw Nash and another man, Terry Victor, standing over the transformer. A bag of tools and a dolly lay nearby. Victor's truck was parked across the street. As the police approached the two men and ordered them to stop, Nash started walking away from the transformer and dropped his gloves. Upon arrest, the police officer noted that Nash smelled like oil.

{¶4} CEI supervisor Chet Pfiester testified that the transformer belonged to CEI, weighed about 3500 pounds, and contained approximately 120 pounds of copper wire. Pfiester testified that the theft of the transformer cost CEI a total of $24,656.11, which

included repairs to the transformer and hazardous material cleanup. He further testified that the transformer was necessary for CEI to conduct its business.

{¶5} The jury convicted Nash of all four counts. The trial court sentenced him to 18 months in prison and ordered him to pay restitution to CEI in the amount of $24,656.11.

{¶6} Nash filed a pro se appeal, raising the following assignments of error for our review, as quoted:

> [I.] The police records are a falsification of information when the evidence which being the bolt cutters and series of electrical power lines are missing as evidence to validate police records: the yellow bolt cutters and electrical power lines were not presented to jurors during trial.
>
> [II.] Appellant was illegally restrained for months by the trial courts order through cancellation of proceedings for the appellant while he and two prosecutors held open court proceedings at appellant request though appellant as defense counsel or defendant pro se was not present and did not give authorization for continuances which suspends O Const Art I Section 10 as is Crim.R. 43 and 44.
>
> [III.] Trial court and prosecutors conspired and committed multiple acts of tampering with court records through unauthorized continuances which caused a loss of jurisdiction and/or a misuse of authority and office.
>
> [IV.] Trial court did not use trial transcript to determine the new trial motion filed April 10, 2012, when the transcript was mandatory to make any determination of judgment.
>
> [V.] Trial court imposed an illegal amount of restitution June 19, 2012, while knowing that James Foster, a CEI representative, had stated in court that same date that the amount was an accumulation of thefts of CEI property.
>
> [VI.] Trial court did not grant an investigator to investigate the crime scene on behalf of appellant when the evidence was ambiguous and not an accurate reflection of the allegations in the indictment.

## Appellate Rules

{¶7} As an initial matter, Nash's brief fails to comply with the appellate rules. We are cognizant that Nash filed his appeal pro se, and appellate courts afford pro se litigants considerable leniency, but we are not required to root out legal arguments for him. *State v. Watson*, 126 Ohio St.3d 316, 321, 710 N.E.2d 340 (1998). Nash lists a third and sixth assignment of error in his table of contents but fails to argue either assignment of error in his brief. Thus, we summarily reject the third and sixth assignments of error under the provisions of App.R. 12(A)(2) and 16(A)(7). Accordingly, the third and sixth assignments of error are overruled.

{¶8} Nash further fails to cite any authority in support of his position in the first, fourth, and fifth assignments of error, as required by App.R. 16. Although the appellate rules were not complied with here, we recognize that cases are best decided on their merits; therefore, we will briefly consider those assignments of error.

## Manifest Weight of the Evidence

{¶9} Although not phrased as such, Nash essentially argues in his first assignment of error that his convictions were against the manifest weight of the evidence.

{¶10} In reviewing a challenge to the manifest weight of the evidence, the Ohio Supreme Court has held that:

> [t]he question to be answered is whether there is substantial evidence upon which [the triers-of-fact] could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we

must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the [triers-of-fact] clearly lost [their] way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Quotes and citations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81.

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). To determine whether a case is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Thompkins* at *id*., citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). An appellate court should reverse the conviction and order a new trial only if it concludes that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice. *Thompkins* at *id*.

{¶11} Nash claims that witness testimony contradicted statements the police made in their report. But it is well-settled that the weight of the evidence and resolution of issues of credibility are matters primarily for the factfinder to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. A thorough review of the record shows that Nash's convictions are not against the manifest weight of

the evidence.

**{¶12}** When police arrived at the scene, they noted that the fenced-in area that housed the transformer had been broken into and a large electrical transformer was missing. The police followed a trail of oil and drag marks for two blocks and found Nash and his accomplice standing over the transformer with a bag of tools and a dolly nearby. Nash dropped a pair of work gloves when the police approached him and the police also noted that he smelled strongly of the oil that had been leaking from the transformer. There was testimony that the transformer was necessary for CEI to conduct its business and the repairs and cleanup totaled $24,656.11. Based on these facts, we cannot say that the jury lost its way in convicting Nash.

**{¶13}** The first assignment of error is overruled.

Speedy Trial

**{¶14}** In the second assignment of error, Nash argues that the trial court granted continuances that he did not authorize and his speedy trial rights were violated.

**{¶15}** An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I, of the Ohio Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 32. These speedy trial rights are essentially equivalent. *State v. Butler*, 19 Ohio St.2d 55, 57, 249 N.E.2d 818 (1969). Ohio's speedy trial statutes, found in R.C. 2945.71 et seq., were implemented to enforce those constitutional guarantees. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 1996-Ohio-171,

661 N.E.2d 706; *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 10.

**{¶16}** R.C. 2945.71(C)(2) requires a criminal defendant against whom a felony charge is pending to be brought to trial within 270 days from his arrest.   Pursuant to R.C. 2945.72, the time within which an accused must be brought to trial is extended by:

\* \* \*

(E) [a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

\* \* \*

(H) [t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

**{¶17}** Although Nash argues that the trial court granted continuances he did not authorize, Nash was represented by counsel during most of the pretrial process. The trial court noted in October 2011 that Nash wished to represent himself, but Nash did not actually waive his right to counsel until March 1, 2012.

**{¶18}** Nash was arrested on August 13, 2011, and was released from jail on bond on October 25, 2011.   He was arrested on a different case on November 8, 2011, and his bond was revoked.   Nash was granted numerous continuances between August 2011 and March 2012 and filed over 20 pro se motions from August 14, 2011 to March 20, 2012. Only one of the motions was served upon the state; when the state discovered the other filed motions on March 1, 2012, it asked for a continuance to respond to the motions.

Nash subsequently filed six more pro se motions, which he did not serve on the state. The state filed an omnibus response to Nash's motions on March 26. Based on these facts, Nash's statutory speedy trial rights were not violated because the speedy trial time was tolled due to his numerous filings. *See State v. Jones*, 8th Dist. No. 90903, 2009-Ohio-3371.

{¶19} We also find that Nash's constitutional speedy trial rights were not violated. In *State v. O'Brien*, 34 Ohio St.3d 7, 516 N.E.2d 218 (1987), the Supreme Court of Ohio stated that statutory and constitutional speedy trial provisions are co-extensive, but that the constitutional guarantees may be broader than statutory provisions in some circumstances. Therefore, a defendant's Sixth Amendment rights to a speedy trial can be violated even though the state has complied with the statutory provisions implementing that right. *Id.* at 9.

{¶20} Because we find no statutory speedy-trial violation here, Nash must demonstrate that the trial court and prosecution violated his constitutional speedy trial rights. *State v. Gaines*, 9th Dist. No. 00CA008298, 2004-Ohio-3407, ¶ 16.

{¶21} In order to determine whether a defendant sustained constitutional speedy trial violations, we balance four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). But first, the defendant must make a threshold showing of a "presumptively prejudicial" delay to trigger application of the *Barker* analysis. *Doggett v. United States*, 505 U.S. 647, 650, 112 S.Ct. 2686, 120

L.Ed.2d 520 (1992), citing *Barker* at 530-531; *State v. Miller*, 10th Dist. No. 04AP-285, 2005-Ohio-518, ¶ 11.   Courts have generally found that a delay approaching one year becomes "presumptively prejudicial."   *Doggett* at 652, fn. 1.

{¶22} The case at bar was pending for seven months and, during that time, Nash requested and was granted numerous continuances and filed over 20 motions. Therefore, Nash does not make the threshold showing that the delay was presumptively prejudicial.   We find no constitutional violation of Nash's speedy trial rights.

{¶23} The second assignment of error is overruled.

### Motion for New Trial

{¶24} In the fourth assignment of error, Nash claims the trial court erred in denying his motion for a new trial without considering the trial transcript.

{¶25} A reviewing court will not reverse a trial court's denial of a motion for a new trial absent some clear abuse of discretion.   *State v. Braun*, 8th Dist. No. 95271, 2011-Ohio-1688, ¶ 34, citing *State v. Schiebel*, 55 Ohio St.3d 71, 76, 564 N.E.2d 54 (1991).   We will not reverse a lower court's refusal to grant a new trial unless there has been an abuse of that discretion and unless it appears that the matter asserted as a ground for a new trial materially affects the substantial rights of the defendant. Crim.R. 33.

{¶26} Crim.R. 33 governs the granting or denying of a defendant's motion for a new trial and provides in part:

> A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
>
> (1) Irregularity in the proceedings, or in any order or ruling of the court, or

abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

* * *

(4) That the verdict is not sustained by sufficient evidence or is contrary to law. * * *

(5) Error of law occurring at the trial.

**{¶27}** In his pro se motion for a new trial, Nash claimed the indictment was defective, misconduct by the prosecutor, false testimony, and missing or withheld evidence.  On appeal, Nash merely argues that the trial court erred in granting the motion without first reviewing the trial transcript.

**{¶28}** Upon review, we find that Nash provided no credible evidence or argument to warrant a new trial.  Thus, having considered the appropriate law and facts, we find no abuse of discretion.

**{¶29}** The fourth assignment of error is overruled.

<u>Restitution</u>

**{¶30}** In the fifth assignment of error, Nash argues the trial court erred in granting restitution to CEI in the amount of $24,656.11.  Nash contends that the amount imposed by the court was unlawful because CEI based the amount on previous damage and thefts of the transformer.  We find some merit to this argument.

**{¶31}** Although a restitution award is ordinarily reviewed using an abuse of discretion standard, appellant failed to object below with regard to the restitution

determination, and thus he waived all but plain error. *State v. Myrick*, 8th Dist. No. 91492, 2009-Ohio-2030, ¶ 30.

{¶32} R.C. 2929.18 governs financial sanctions and the procedures that must be followed in determining the appropriate amount of restitution. This statute provides that the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction, including:

> [(A)](1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

{¶33} R.C. 2929.19(B)(5) provides that "[b]efore imposing a financial sanction

under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine."

{¶34} In this case, CEI representative Pfiester testified at trial and at the sentencing hearing regarding the amount of restitution. At trial, he testified that "because of the ongoing thefts, we had to have the forester department out there to clear some trees out for better visibility. We had to put up spotlights. * * * We had to have the fence repaired several times."

{¶35} The state entered into evidence as Exhibit 8 a handwritten "cheat sheet" that Pfiester prepared detailing CEI's expenses. Pfiester stated at the sentencing hearing that "a number of transformers were vandalized and entered into for purposes of removing copper. The total list are of record in Exhibit 8."

{¶36} There are a number of concerns with the amount of restitution the trial court ordered Nash to pay. According to Exhibit 8, CEI paid $550 to "make a clear view of transformers from street" and $500 for installation of a flood light. Neither of these costs may be assessed in the restitution award; they were security measures CEI put in place after the crime occurred and cannot be considered economic losses. CEI also paid $539 for fence repair, but Exhibit 8 states that the cost was for fence repair the "1st time (2nd time figured in a job)." Thus, there is at least some likelihood that the $539 fee is for a fence repair from a break-in that occurred before August 13, 2011.

{¶37} Exhibit 8 also lists charges in the amount of $240 for "troublemans time,"

$7,509.61 for hazardous cleanup, $49 for copper wire, $148.50 for crane operator, and $90 for a crane truck. But Pfiester stated at the sentencing hearing that Exhibit 8 contained a "total list" from "a number of transformers," thus, it is unclear if those charges relate solely to the crimes that occurred on August 13, 2011. Finally, most concerning to this court, is a notation of $15,030.00, without any explanation of what the charge relates to, and the state offered no evidence on this amount at trial or sentencing.

{¶38} Pursuant to R.C. 2929.18, the amount of restitution the court orders "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." While the replacement of the transformer, the fence repair, the hazardous waste cleanup, and associated labor costs from the theft that occurred on August 13, 2011, may certainly be a direct and proximate result of Nash's crimes, it is abundantly clear that CEI sought damages that far exceeded its economic loss from that single event.

{¶39} Therefore, the trial court must hold a hearing to determine the correct amount of restitution owed and must also consider Nash's present and future ability to pay.

{¶40} The fifth assignment of error is sustained.

{¶41} Accordingly, Nash's convictions are affirmed but the order of restitution is vacated, and this case is remanded to the trial court for a hearing on restitution in conformity with R.C. 2929.18 and 2929.19(B)(5).

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR