[Cite as *In re M.N.*, 2017-Ohio-7302.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: M.N. | : | APPEAL NO. C-160522<br>TRIAL NO. 15-3141Z |
|  | : |  |
|  | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 23, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Appellant M.N.

**MOCK, Presiding Judge.**

{¶1}    Appellant M.N. has appealed from the juvenile court's order imposing restitution for the victim's costs to rekey her home and her car.  We find no merit to his assignment of error, and we affirm the juvenile court's judgment.

### Factual and Procedural Background

{¶2}    At approximately 2:00 a.m. on Sunday April 26, 2015, M.N. was stopped by the police as he was driving a stolen car.  A complaint was filed in juvenile court charging M.N. with committing acts which, had he been an adult, would have constituted the offense of receiving stolen property in violation of R.C. 2913.51.  M.N. entered into a plea agreement and admitted to a reduced charge of unauthorized use of a vehicle in violation of R.C. 2913.03.  Following his adjudication, M.N. requested an evidentiary hearing to challenge the restitution amount of $1,369.16.

{¶3}    At the restitution hearing, Carrie Meece, the victim of the offense, testified that, while she was at work, she noticed her car key was missing from her key ring.  Two days later, her car was stolen from her work place on a Friday afternoon.  She reported the car stolen that day, and the car was recovered at 2 a.m. that Sunday.

{¶4}    Meece testified that the vehicle sustained a fair amount of body damage, and that numerous items were stolen from the car.  She prepared a list of all of the missing items and the cost to replace them.  She also testified that her registration, which listed her home address, was in the glove compartment, and she kept a spare set of keys, which included her house keys, in the car.  The car key that had been removed from her key chain was recovered from M.N. upon his arrest.

{¶5}    Meece spent $175 to rekey the car and $230.53 to rekey the home, for a total of $405.53.  She rekeyed both because "the police recommended that we rekey everything because we didn't know if they had made another key from the vehicle, since they had the

master key." She further explained that she rekeyed both for security purposes since her home address was on the registration papers.

{¶6}    The juvenile court ordered M.N. to pay restitution in the amount of $1,369.16.  M.N. is challenging the award of $405.53 to rekey the house and car.

### Law and Analysis

{¶7}    In one assignment of error, M.N. contends that the juvenile court abused its discretion in imposing restitution for the rekeying of the victim's home and car because the costs were noneconomic losses ineligible for restitution, and the costs were not caused by the offense of unauthorized use of a vehicle.  This assignment of error is not well taken.

{¶8}    Generally, a decision to award restitution lies within the sound discretion of a juvenile court and will not be reversed on appeal absent an abuse of discretion.  *See In re M.A.*, 2016-Ohio-1161, 61 N.E.3d 630, ¶ 12 (11th Dist.).   "There must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty." *State v. Seele,* 6th Dist. Sandusky No. S-13-025, 2014-Ohi0-1455, ¶ 9.  A trial court abuses its discretion by ordering restitution in an amount that does not bear a reasonable relationship to the actual loss suffered.  (Internal citations omitted.)  *See State v. Portentoso,* 173 Ohio App.3d 297, 2007-Ohio-5490, 878 N.E.2d 76, ¶ 8 (3d Dist.); *State v. Bulstrom,* 2013-Ohio-3582, 997 N.E.2d 162, ¶ 19 (4th Dist.).

{¶9}    R.C. 2152.20(A)(3) provides that, if a child is adjudicated delinquent, "the court may * * * require the child to make restitution to the victim of the child's delinquent act * * * in an amount based upon the victim's economic loss caused by or related to the delinquent act."  It also provides that restitution orders cannot exceed "the amount of the economic loss suffered by the victim as a direct and proximate result of the delinquent act * * *." *Id.*

{¶10}   Economic loss is defined under R.C. 2152.02(K) as:

[A]ny economic detriment suffered by a victim of a delinquent act * * * as a direct and proximate result of the delinquent act * * * and includes any loss of income due to lost time at work because of any injury caused to the victim and any property loss, medical cost, or funeral expense incurred as a result of the delinquent act * * *. 'Economic loss' does not include non-economic loss or any punitive or exemplary damages.

{¶11}   Noneconomic loss is defined under R.C. 2152.02(CC) as "nonpecuniary harm suffered by a victim of a delinquent act * * * as a result of or related to the delinquent act" which includes items such as pain and suffering, loss of consortium, mental anguish, and other intangible losses.

{¶12}   M.N. argues that the cost of the rekeying was not a direct and proximate result of M.N.'s conduct because there was no link between M.N.'s unauthorized use of the car and the costs to rekey the house and car.  M.N. further argues that the costs were noneconomic, security measures taken after the offense occurred in order to deter future crimes.

{¶13}   In support of his arguments, M.N. cites to several cases that determined that costs incurred to enhance or improve security after the offense was committed were noneconomic costs that were ineligible for restitution.  *See In re Z.N.*, 2015-Ohio-1213, 29 N.E.3d 1016 (11th Dist.); *State v. Seele*, 6th Dist. Sandusky No. S-13-025, 2014-Ohio-1455; *State v. Nash*, 8th Dist. Cuyahoga No. 98658, 2013-Ohio-1346; *State v. Plants*, 8th Dist. Cuyahoga No. 101552, 2014-Ohio-5293.  However, those cases are distinguishable because the security measures in those cases were taken to enhance or improve future security and deter future crime.

4

{¶14}   Here, the costs to rekey the home and car did not enhance Meece's future security.  Rather, the costs were necessary to restore the security that she had prior to the offense.  Once M.N. had access to her house and car keys, the replacement of the locks was necessary to ensure that she continued to have exclusive control over her home and car. Therefore, the costs were proximately caused by M.N.'s crime.   *See State v. Jackson*, 1st Dist. Hamilton No. C-140573, 2015-Ohio-3742, ¶ 7 (concluding that costs to hire security guards, while the wall the defendant destroyed was being repaired, were proximately caused by the defendant's crime).

{¶15}   Accordingly, we overrule the sole assignment of error and affirm the court's judgment.

Judgment affirmed.

**DETERS, J.,** concurs.
**ZAYAS, J.,** concurs in part and dissents in part.

**ZAYAS, J.,** concurring in part and dissenting in part.

{¶16}   I agree that the cost to rekey the car was proximately caused by M.N.'s offense because it was necessary to restore the victim's security.  However, based on this record, I disagree that the cost of rekeying the home was an economic expense caused by M.N.'s offense.  Absent any evidence that M.N. accessed the spare keys or registration papers, the cost to rekey the house was not an economic loss as contemplated by the statute.

{¶17}   The only testimony regarding the spare keys was that they were in the car and included house keys. With respect to the registration papers, Meece testified that they were kept in the glove compartment.  The keys and registration papers were not included on the list of missing items, and Meece did not testify that they were missing, so presumably, she recovered them.

{¶18}  There is nothing in the record that suggests that M.N. had found or possessed the spare keys.  There is no evidence that the keys had been moved or otherwise disturbed.  Likewise, there was no testimony that the glove compartment had been opened or that the registration papers had been disturbed or removed from the glove compartment.  Absent any evidence that M.N. had accessed or possessed the keys and registration papers, I cannot conclude that the security of the home had been compromised by M.N.'s offense.

{¶19}  Moreover, as M.N. correctly pointed out, there was no evidence of any damage to the home locks that would require them to be rekeyed.  *See Seele*, 6th Dist. Sandusky No. S-13-025, 2014-Ohio-1455, at ¶ 9 (concluding that the court committed error by ordering restitution to replace the victim's locks absent any evidence in the record that the locks were damaged).  The sole basis for imposing the cost of rekeying the home was the victim's alleged feeling of insecurity based upon the speculation that M.N. may have had found the spare keys, made a copy of the house key, found the registration papers in the glove compartment, retrieved the papers, read the papers, and memorized the home address on the papers.  Absent any competent, credible evidence that M.N. accessed the house key or registration papers, the trial court abused its discretion in ordering restitution for the cost to rekey the house.  *See id.*

{¶20}  Accordingly, I would modify the judgment to reduce the restitution order to $1138.63 and affirm the judgment of the juvenile court as modified.

Please note:

The court has recorded its own entry on the date of the release of this opinion.