# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: A.C. | : | APPEAL NOS. | C-240172 |
| | | | C-240173 |
| | : | | C-240174 |
| | | | C-240175 |
| | : | | C-240176 |
| | | | C-240177 |
| | : | | C-240178 |
| | | | C-240179 |
| | : | | C-240180 |
| | | | C-240181 |
| | : | | C-240233 |
| | | | C-240234 |
| | : | | C-240235 |
| | | | C-240236 |
| | : | | C-240306 |
| | | | C-240307 |
| | : | | C-240308 |
| | | | C-240309 |
| | : | TRIAL NOS. | 23/2785-01 Z |
| | | | 23/2785-02 Z |
| | : | | 23/2785-03 Z |
| | | | 23/2785-04 Z |
| | : | | 23/2785-05 Z |
| | | | 23/1841-01 Z |
| | : | | 23/1841-02 Z |
| | | | 23/2783-01 Z |
| | : | | 23/2783-02 Z |
| | | | 23/2783-03 Z |
| | : | | 23/1839-01 Z |
| | | | 23/1839-02 Z |
| | : | | 23/637-01 Z |
| | | | 23/637-02 Z |
| | : | | 23/2784-01 Z |
| | | | 23/2784-02 Z |
| | : | | 23/2784-03 Z |
| | | | 23/1840-01 Z |

*JUDGMENT ENTRY*

This cause was heard upon the appeals, the records, the briefs, and the arguments.

The judgments of the trial court are affirmed in part and reversed in part, and the cause is remanded for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for these appeals, allows no penalty, and orders that costs are taxed 50% to appellee and 50% to appellant.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/21/2025 per order of the court.**

**By:**_____
       **Administrative Judge**

[Cite as *In re A.C.*, 2025-Ohio-1801.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.C. | : | APPEAL NOS. C-240172 |
| | | C-240173 |
| | : | C-240174 |
| | | C-240175 |
| | : | C-240176 |
| | | C-240177 |
| | : | C-240178 |
| | | C-240179 |
| | : | C-240180 |
| | | C-240181 |
| | : | C-240233 |
| | | C-240234 |
| | : | C-240235 |
| | | C-240236 |
| | : | C-240306 |
| | | C-240307 |
| | : | C-240308 |
| | | C-240309 |
| | : | TRIAL NOS. 23/2785-01 Z |
| | | 23/2785-02 Z |
| | : | 23/2785-03 Z |
| | | 23/2785-04 Z |
| | : | 23/2785-05 Z |
| | | 23/1841-01 Z |
| | : | 23/1841-02 Z |
| | | 23/2783-01 Z |
| | : | 23/2783-02 Z |
| | | 23/2783-03 Z |
| | : | 23/1839-01 Z |
| | | 23/1839-02 Z |
| | : | 23/637-01 Z |
| | | 23/637-02 Z |
| | : | 23/2784-01 Z |
| | | 23/2784-02 Z |
| | : | 23/2784-03 Z |
| | | 23/1840-01 Z |

O P I N I O N

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: May 21, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Margaret Kane*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} In these consolidated appeals from his adjudicated delinquencies, A.C. specifically contests his adjudication for felonious assault with a firearm specification, in the case numbered 23/2785-01, challenging the sufficiency and manifest weight of the evidence supporting the adjudication and the disposition on the felonious-assault adjudication. A.C. also contends that the trial court erred in ordering restitution for damage to the victim's vehicle that was not the direct and proximate result of A.C.'s conduct in the case numbered 23/1840-01. Finally, A.C. challenges the dispositions in all of the cases, arguing that the juvenile court abused its discretion by committing A.C. to the Department of Youth Services ("DYS") without considering A.C.'s best interest. We agree with A.C. that the adjudication for felonious assault was not supported by sufficient evidence, reverse it, and remand the cause to the juvenile court.

## Factual Background

{¶2} A.C. was adjudicated delinquent for committing 18 offenses, stemming from seven different incidents between February and June of 2023 in three separate counties. After A.C.'s adjudications in the various counties, all of the cases were transferred to Hamilton County for disposition. All of the charges were resolved by plea except for the cases numbered 23/2785-01 through 05 that originated in Cuyahoga County for several incidents that occurred in May 2023. In those cases, A.C. was charged with felonious assault, receiving stolen party, aggravated menacing, and two counts of criminal damaging. A.C. was adjudicated delinquent of all of the charges following a trial.

**Felonious-Assault Adjudication**

{¶3} During the trial, T.R. testified that on May 31, she went to visit her aunt in Cuyahoga County after finishing work in Lake County. T.R. testified that she was driving to the freeway "when the accident occurred." As she was driving home around 5:00 p.m., T.R. noticed a Kia Sportage behind her with someone "just lollygagging and hanging out of the [driver's] window." T.R. described the driver, later identified as A.C., as "very, very young," who probably was not old enough to drive. When she first noticed the car, it was about 20 feet behind her, traveling at almost the speed limit of 25 m.p.h. T.R., who had been stopped at a red light, started to turn left when the Kia's front bumper hit her back bumper. At the time, T.R. was driving less than 25 m.p.h., and A.C. was still hanging out of the window. After the collision, T.R.'s earbud began playing music.

{¶4} After A.C. hit her bumper, he reversed the car and then "tapped" her bumper a second time. T.R. described it as a "little tap" and testified that she was unsure if A.C. was trying to drive around her vehicle when he tapped it. After the tap, the two "waited a little bit," and then he pulled up next to her car. T.R. was curious to hear what A.C. had to say because she did not believe he had insurance to exchange. A.C. said, "Pull to the side street." A.C. was holding a gun in his hand but did not point it in her direction or threaten her. Then he left, and T.R. drove to the police station and reported the incident.

{¶5} T.R. testified that A.C. was not angry. She further testified that "[she] believed he thought it was a joke." When asked to explain, T.R. testified that, "He just didn't seem to have a care. It just seemed like this was a game."

{¶6} The next witness was Cleveland Police Detective Shaun Polocy, who had investigated the incident. While reviewing the videotape from city cameras at the

intersection close to where the incident occurred, Polocy observed a gold Kia Sportage. The driver was hanging halfway out of the window, almost at waist level, driving "recklessly." The car drove through a parking lot and onto the road where the incident occurred, when it went out of camera range. The incident occurred shortly afterwards.

**{¶7}** The magistrate found that A.C. knowingly struck T.R.'s vehicle, explaining that "it's pretty knowingly that you would hit a car in front of you if you're driving with your body out the window." A.C. filed objections, and the juvenile court overruled the objections and adopted the magistrate's decision, finding that "the testimony established that the child intentionally hit the victim with the car."

**{¶8}** In his first assignment of error, A.C. contends the State presented insufficient evidence to establish every element of the charged offense, and the weight of the evidence did not support the adjudication.

**{¶9}** A.C. was adjudicated delinquent for violating R.C. 2903.11(A)(2), which required the State to prove that he knowingly caused or attempted to cause physical harm to T.R. by means of a deadly weapon or dangerous ordnance. *See State v. Eitzman*, 2022-Ohio-574, ¶ 11 (3d Dist.), citing R.C. 2903.11(A)(2). In this case, the deadly weapon was a vehicle, which could be a deadly weapon "when used in a manner likely to produce death or great bodily harm." *State v. Belcher*, 2014-Ohio-5596, ¶ 29 (6th Dist.). In considering whether a vehicle could be a deadly weapon, "[t]he intent of the user, manner of use, and actions of the user are among the factors that must be examined." *Id.* at ¶ 29. A careless or negligent use of a vehicle, however, does not equal use of the vehicle as a deadly weapon without evidence that the driver actually used or possessed the vehicle as a weapon as opposed to a conveyance. *State v. Nastal*, 2022-Ohio-970, ¶ 20 (6th Dist.).

**{¶10}** A.C. contends that the evidence was insufficient to establish that he

7

knowingly committed the offense because he had accidentally or recklessly collided with T.R. Here, the evidence established that A.C., who was very young, was "lollygagging and hanging out the [driver's side] window" as he was driving, in a manner described by the officer as reckless. When the slow-speed collision occurred, T.R. testified that A.C. was driving at or below the posted limit of 25 m.p.h. and was still hanging out of the window. The record contains no evidence that A.C. sped up before rear-ending T.R.'s vehicle or maneuvered his vehicle to deliberately hit her.

{¶11} T.R. described A.C. as "very, very young" and probably not old enough to drive. During the encounter, A.C. was not angry, appeared carefree, and "thought it was a joke." Her vehicle was barely damaged, and she sought no restitution from A.C. T.R. described the incident as "an accident" and questioned whether A.C. had insurance. Thus A.C.'s actions and manner of use does not prove that A.C. used the vehicle as more than a conveyance. *See id.* Rather, the evidence established that A.C. used the vehicle in a careless or negligent manner which is insufficient to prove that A.C. used the vehicle as a deadly weapon. *See id.* Based on this record, we cannot conclude that the State proved, beyond a reasonable doubt, that A.C. knowingly caused or attempted to cause physical harm to T.R. by means of a deadly weapon.

{¶12} Accordingly, we sustain the first assignment of error.

### Felonious-Assault Disposition

{¶13} In his second assignment of error, A.C. contends the juvenile court erred in committing him to DYS for a minimum term of two years relating to his adjudication for felonious assault. Based upon our resolution of his first assignment, this assignment of error is moot. *See* App.R. 12(A)(1)(c).

8

## Restitution

**{¶14}** In his third assignment of error, A.C. argues that the court erred in ordering him to pay restitution in the amount of $4,638.88 for the victim's vehicle where the damage was not the result of the conduct for which A.C. was adjudicated.

**{¶15}** In the juvenile case numbered 23/1840-01 (appeal numbered C-240309), A.C. was adjudicated delinquent for grand theft of a motor vehicle. The victim was awarded restitution for the damage to the dashboard of her vehicle in the amount of $4,262. At the restitution hearing, the victim testified that her 2017 Kia Forte was stolen in June 2023. When the car was returned to her, a part was missing from the dashboard. The victim took the car to a Kia dealership, and a service representative estimated the repair to the dashboard would cost $4,262.17 because the repair would require removing the entire dashboard, replacing the wiring inside the dashboard, and putting in a new dashboard. The victim provided the repair estimate to the court and explained that her insurance refused to cover the damages because she had left her keys in the vehicle the day it was stolen.

**{¶16}** When the police returned the car to her, an officer showed the victim the damaged dashboard and the place where a component had been ripped from the dashboard. A wire was sticking out of the dashboard. The victim testified the component piece was there when her car was stolen and was gone when the car was returned. The court awarded the victim restitution for the dashboard repairs.

**{¶17}** A.C. contends that the damage to the dashboard was unrelated to the theft offense.

**{¶18}** We review a trial court's award of restitution for an abuse of discretion. *State v. Miles*, 2021-Ohio-4581, ¶ 5 (1st Dist.). "A trial court abuses its discretion by ordering restitution in an amount that does not bear a reasonable relationship to the

actual loss suffered." *In re A.B.*, 2021-Ohio-4273, ¶ 8 (1st Dist.), citing *In re M.N.*, 2017-Ohio-7302, ¶ 8 (1st Dist.). An award of restitution must be "supported by competent, credible evidence in the record from which the court can discern the amount of restitution to a reasonable degree of certainty." *State v. Caldwell*, 2023-Ohio-355, ¶ 14 (4th Dist.). A victim's testimony alone may be sufficient to establish the economic loss. *State v. Benko*, 2019-Ohio-3968, ¶ 10 (9th Dist.).

**{¶19}** Under R.C. 2152.20(A)(3), a juvenile court may award restitution to the victim of the offender's crime, in "an amount recommended by the victim . . . , a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and any other information . . . ." Economic loss is defined under R.C. 2152.02(K) as "[A]ny economic detriment suffered by a victim of a delinquent act . . . as a direct and proximate result of the delinquent act . . . and includes . . . any property loss, medical cost, or funeral expense incurred as a result of the delinquent act . . . ."

**{¶20}** Here, the victim testified that a part of her dashboard had been ripped from her vehicle leaving a wire sticking out. The victim presented a repair estimate from Kia showing that the cost to repair the damage to the dashboard was $4,262.17, which A.C. did not challenge. Finally, the victim testified that her dashboard was intact when her car was stolen, and the dashboard was damaged when the car was returned. Based on this record, the juvenile court did not abuse its discretion in awarding restitution to repair the damage to the dashboard. Contrary to A.C.'s assertion, the record contains credible evidence that the damage to the dashboard was caused by A.C. while he possessed the vehicle.

**{¶21}** We overrule the third assignment of error.

### Dispositional Orders

**{¶22}** In his fourth assignment of error, A.C. contends the juvenile court abused its discretion in issuing dispositional orders without adequately considering A.C.'s best interest.

**{¶23}** At the disposition hearing, the representative from probation recommended that A.C. be committed to DYS. Probation explored other less restrictive facilities, but all 26 referrals made by probation were denied. The reasonable efforts made were detention, probation, Carey Guides, psychology clinic, and multiple residential placements.

**{¶24}** The State's caseworker informed the court that she believed A.C. had potential, but he struggled with remorse and empathy, lacked insight into his behaviors, and blamed her, instead of his own actions, for his current confinement.

**{¶25}** The State reviewed A.C.'s record and determined that he had 29 prior contacts with the juvenile court system and 22 adjudications. His current adjudications were for stolen cars, felonious assault, and a gun specification, which mandated DYS time. Based on A.C.'s risk-assessment score, he is considered to be at high risk for delinquent behavior. A.C. exhibited a pattern and history of rebellion against authority and had absconded or been "kicked out" for violent behavior from multiple residential facilities. A.C. threatened to assault staff at Carrington Residential before absconding and committing nine felony offenses in two counties. The prosecutor opined that A.C. needed to be placed in DYS due to the need for a secure facility and for the mandatory disposition on the gun specification.

**{¶26}** The court found that the probation department had explored residential placements for A.C. but all 26 referrals were rejected. A.C.'s previous placements were unsuccessful, and he absconded from multiple facilities. Ultimately, the court

determined that the only appropriate disposition was a commitment to DYS and imposed an aggregate minimum term of five-and-a-half years and a maximum period not to exceed the child's attainment of 21 years of age.

**{¶27}** A juvenile court has "broad discretion to craft an appropriate disposition for a juvenile who is adjudicated," which will be upheld unless the juvenile court abused its discretion. *In re D.S.*, 2006-Ohio-5851, ¶ 6. An "abuse of discretion" is more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Under this standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

**{¶28}** Under R.C. 2152.01(A), the overriding purposes for disposition of juvenile offenders are "to provide for the care, protection, and mental and physical development of children . . . , protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." "These purposes shall be achieved by a system of graduated sanctions and services." R.C. 2152.01(A).

**{¶29}** A.C. argues that the commitment to DYS was not in his best interest due to his particular vulnerabilities and the need for therapy and not punishment. A.C. does not contend that the juvenile court failed to apply the appropriate statutes or consider all of the relevant factors.

**{¶30}** A review of the record confirms that the dispositions were consistent with the statutory requirements and entered after the court considered the purposes of juvenile dispositions. The court found that reasonable efforts had been made, including placements in residential facilities. Because A.C. absconded from multiple residential facilities, the court found that "DYS, unfortunately, is the next logical step."

Based on this record, we cannot find that the trial court's disposition orders were an abuse of discretion.

**{¶31}** Accordingly, we overrule the fourth assignment of error.

### Conclusion

**{¶32}** Having sustained the first assignment of error, which rendered the second assignment of error moot, we reverse the judgment of the juvenile court in the case numbered 23/2785-01. We recognize that the reversal of the adjudication and disposition in the case numbered 23/2785-01 may have an impact on the dispositions in the remaining cases and remand the cause to the juvenile court to correct the dispositional entries to reflect the reversal of the disposition in the case numbered 23/2785-01. Finally, having overruled the third and fourth assignments of error, we affirm the judgments of the court in all other respects.

Judgments affirmed in part, reversed in part, and cause remanded.

**KINSLEY, P.J.**, and **MOORE, J.,** concur.