[Cite as *State v. Thompkins*, 2026-Ohio-812.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                          |   |                          |              |
|--------------------------|---|--------------------------|--------------|
| STATE OF OHIO,           | : | APPEAL NO.               | C-250277     |
|                          |   | TRIAL NO.                | B-2303974    |
| Plaintiff-Appellee,      | : |                          |              |
|                          |   |                          |              |
| vs.                      | : |                          |              |
|                          |   | *JUDGMENT ENTRY*         |              |
| CARLOS THOMPKINS,        | : |                          |              |
|                          |   |                          |              |
| Defendant-Appellant.     | : |                          |              |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 3/11/2026 per order of the court.**


**By:**_____
         **Administrative Judge**

**[Cite as *State v. Thompkins*, 2026-Ohio-812.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                 :        APPEAL NO.    C-250277
                                              TRIAL NO.      B-2303974

       Plaintiff-Appellee,         :

  vs.                             :

                                               *O P I N I O N*

CARLOS THOMPKINS,       :

       Defendant-Appellant.     :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 11, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** Defendant-appellant Carlos Thompkins challenges the trial court's imposition of $6,341.43 in restitution. Because the trial court was within its discretion to deduct charges that it viewed as legitimate from the total amount of restitution requested by the State, we overrule Thompkins's assignment of error and affirm the trial court's judgment.

## I. Factual and Procedural History

**{¶2}** Thompkins pleaded guilty to one count of first-degree misdemeanor falsification in violation of R.C. 2921.13(A). After a two-day restitution hearing, the trial court sentenced Thompkins to two years of community control and imposed a restitution award of $6,341.43. The evidence presented at the restitution hearing is as follows.

**{¶3}** Thompkins was elected president of the Hughes High School Alumni Foundation in February 2020. As president, Thompkins had access to two bank accounts: the Hughes Alumni Scholarship Fund and the Hughes Alumni Foundation account. The purpose of the Scholarship Fund was to provide scholarships for graduates of Hughes High School. The Alumni Foundation account was for general Foundation operating expenses.

**{¶4}** Shortly after Thompkins became president, he began using Foundation funds for personal expenses. The State identified over 70 fraudulent transactions. One transaction was from the Scholarship Fund. The rest of the transactions came from the Alumni Foundation account.

**{¶5}** The State's chief witness, Erica Ward, offered testimony about these transactions. Ward served as the Foundation's treasurer when Thompkins was president. Thompkins also testified on his own behalf.

3

**{¶6}** The only transaction that the State identified as fraudulent from the Scholarship Fund was a $1,500 ATM withdrawal on November 18, 2022. Ward testified that Thompkins told her that he was withdrawing $1,500 to pay his rent to avoid eviction. Ward informed Thompkins that he could not use Foundation funds for that purpose. Thompkins withdrew the cash anyway and promised Ward he would replace the funds.

**{¶7}** Thompkins offered a different explanation as to why he withdrew $1,500. According to Thompkins, he withdrew $1,500 not for his own benefit, but to create a grant for a Hughes alumnus "in distress." He admitted that the Foundation board did not approve this grant, but reasoned that as president, he had the authority to make business decisions.

**{¶8}** The remaining transactions which the State identified as fraudulent were from the Alumni Foundation account. The State categorized the fraudulent transactions from this account into three groups: gas, restaurants, and ATM withdrawals.

**{¶9}** Thompkins testified that he would use Foundation money to put gas in his car if he "spent the whole day doing foundation business in [his] personal car[.]" He felt that if he "was driving a lot of places . . . doing foundation business in [his] personal car" buying his gas "was the least the foundation could do."

**{¶10}** Regarding transactions at restaurants, Thompkins testified that some purchases, such as a $70.07 transaction at MadTree, were for executive planning meetings. Four October 2022 transactions totaling $394.80 at Copa Lounge were for a social event organized by the Foundation. The social event occurred during the week of a fundraising gala. When asked about multiple other restaurant transactions, Thompkins testified that he could not remember what they were for.

**{¶11}** The third category of transactions was ATM withdrawals. Thompkins contended that some of the ATM withdrawals were to recompense "volunteers" who had assisted the Foundation with fundraising efforts by working concessions stands at Cincinnati Bengals football games.[1] Notably, not all the ATM withdrawals took place in downtown Cincinnati, on days that the Bengals played home games.

**{¶12}** Ward testified that Thompkins should have been paying concession volunteers via check. Thompkins testified that he paid volunteers with cash because he did not have access to a check book.

**{¶13}** In total, the State alleged $6,806.30 in fraudulent transactions. The sum was supported by certified bank records from Fifth Third Bank, which were admitted into evidence.

**{¶14}** At the end of the restitution hearing, the trial court ordered that Thompkins pay $6,341.43 in restitution. The trial court reached this award by subtracting the Copa Lounge and MadTree charges from the total amount requested by the State. The court deducted those charges because it reasoned that they could arguably have been for legitimate Foundation purposes.

**{¶15}** Thompkins appeals the trial court's restitution award.

## II. Analysis

**{¶16}** In one assignment of error, Thompkins argues that the trial court abused its discretion by ordering restitution in the amount of $6,341.43.

**{¶17}** In a misdemeanor case, we review a trial court's restitution award for an abuse of discretion. *State v. Moore*, 2023-Ohio-3318, ¶ 10 (1st Dist.), citing *State*

---

[1] The Foundation had an arrangement with Aramark, the concession vendor for the Bengals. Aramark would pay the Foundation for each person it provided to work concession stands. In order to motivate people to "volunteer," the Foundation would pay volunteers a portion of what it received from Aramark.

*v. Miles*, 2021-Ohio-4581, ¶ 5 (1st Dist.). "'A trial court abuses its discretion by ordering restitution in an amount that does not bear a reasonable relationship to the actual loss suffered.'" *Id.*, quoting *In re A.B.*, 2021-Ohio-4273, ¶ 8 (1st Dist.), citing *In re M.N.*, 2017-Ohio-7302, ¶ 8 (1st Dist.). Additionally, an abuse of discretion occurs if the restitution award "is not supported by competent, credible evidence in the record from which the court can discern the amount of restitution to a reasonable degree of certainty." *Id.*, quoting *State v. Caldwell*, 2023-Ohio-355, ¶ 14 (4th Dist.).

**{¶18}** R.C. 2929.28 permits a trial court to impose a restitution award in an amount based on the victim's economic loss. *State v. Dunn*, 2026-Ohio-241, ¶ 15 (1st Dist.), citing *State v. Haskett*, 2024-Ohio-5933, ¶ 14 (1st Dist.), citing R.C. 2929.28(A)(1). Economic loss is "'any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense.'" *Dunn* at ¶ 15, quoting R.C. 2929.01(L).

**{¶19}** Thompkins argues that the evidence justifying the trial court's deduction of the MadTree and Copa Lounge charges from the restitution award is no stronger than the evidence indicating that other charges should likewise have been subtracted. He points to text messages between him and Ward in support of his argument that other transactions were similarly legitimate.

**{¶20}** We refuse to modify or eliminate the trial court's award. "A trial court has discretion to order restitution in an appropriate case and may base the amount it orders on a recommendation of the victim, . . . estimates or receipts indicating the cost of repairing or replacing property" as long as the amount ordered is not greater than the economic loss suffered as a result of the offense. *State v. Gutherie*, 2020-Ohio-501, ¶ 23 (1st Dist.), quoting *State v. Lalain*, 2013-Ohio-3093, paragraph one of the syllabus.

**{¶21}** Here, the restitution award ordered by the trial court was less than the Foundation's total economic loss. After a two-day restitution hearing, the trial court, in its discretion, determined that an award of $6,341,43 was appropriate. We cannot say that the trial court's decision to subtract the MadTree and Copa Lounge charges, and not others, was unreasonable or otherwise unsupported by the record. *See State v. McKinney*, 2025-Ohio-4826, ¶ 9 (1st Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 33. Accordingly, we will not disturb the award on appeal.

### III. Conclusion

**{¶22}** The trial court did not abuse its discretion in awarding $6,341.43 in restitution. Thompkins's assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **MOORE, J.,** concur.