[Cite as *In re J.G.*, 2021-Ohio-1624.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

IN RE:

J.G.                                                    CASE NO.  8-20-59

DELINQUENT CHILD &
SERIOUS YOUTH OFFENDER.

[J.G. - APPELLANT/CROSS-APPELLEE            O P I N I O N
    -and-
STATE OF OHIO - APPELLEE-
CROSS/APPELLANT]

Appeal from Logan County Common Pleas Court
Juvenile Division
Trial Court No. 18-JD-180

Judgment Affirmed

Date of Decision:   May 10, 2021

APPEARANCES:

*Alison Boggs* for Appellant/Cross-Appellee

*Chelsea R. Maggio* for Appellee/Cross-Appellant

**SHAW, J.**

{¶1} Delinquent Child, J.G., appeals the October 6, 2020 judgment entry issued by the Logan County Court of Common Pleas, Juvenile Division. On appeal, J.G. challenges the juvenile court's imposition of a blended sentence and order of restitution. The State also cross-appeals from the same judgment entry assigning error to the juvenile court's order of restitution.

*Procedural History*

{¶2} On November 13, 2018, the Logan County Grand Jury returned a nine-count indictment against J.G., a juvenile born in 2003, alleging him to be a delinquent child by reason of Counts 1 and 2, rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, if committed by an adult; and Counts 3 through 9, gross sexual imposition, in violation of R.C. 2907.05(A)(4), a felony of the third degree, if committed by an adult. All nine counts carried a serious youthful offender ("SYO") specification, alleging that J.G. was at least 14-years-old when he committed the offenses and subject to a discretionary SYO dispositional sentence. The charges arose from allegations that J.G. inserted his fingers into and/or touched the vagina of a young girl and inappropriately touched four other young girls while riding the school bus. All of the victims were under the age of 13, ranging in ages from five to eight-years-old at the time the offenses occurred. Upon arraignment, J.G. entered a denial to the charges.

{¶3} On November 5, 2019, J.G. withdrew his previously tendered denials and entered an admission to Count 1, the offense of first-degree felony rape, and no contest to Counts 6, 8, and 9, third-degree felony gross sexual imposition. The State agreed to dismiss the remaining five charges, while also stating its intent to recommend that the juvenile court impose a blended SYO sentence consisting of a traditional juvenile disposition coupled with the imposition of a stayed adult sentence. The juvenile court accepted J.G.'s admission and pleas, adjudicated him delinquent on the four charges, and ordered a presentence investigation and additional assessments, including a juvenile sex offender assessment, to be completed prior to disposition and the SYO determination.

{¶4} On January 28, 2020, J.G. appeared for disposition before the juvenile court. At the dispositional hearing, the juvenile court heard statements from the victims' families and the parties' arguments regarding the imposition of a blended sentence. Specifically, the court heard arguments pertaining to the SYO specifications, which permit the juvenile court to impose a blended sentence based upon the offender's age, the nature and circumstances of the offenses, and other factors. J.G. also presented the testimony of a psychologist who assessed his amenability to treatment in the juvenile system.

{¶5} The juvenile court stated that it had considered the victims' statements and the evidence presented along with the assessment reports submitted prior to the

hearing. The juvenile court then imposed a blended sentence with a juvenile disposition committing J.G. to the legally custody of the Department of Youth Services ("DYS") for an indefinite term of a minimum period of one to three years and a maximum period not to exceed his 21st birthday on Count 1, rape; and a commitment to DYS on each of the remaining counts of gross sexual imposition (Counts 6, 8, and 9) for an indefinite term of a minimum period of six months and a maximum period not to exceed his 21st birthday. Specifically, the juvenile court ordered J.G. to the custody of a residential based sexual offender treatment program.

{¶6} For the adult portion of J.G.'s blended sentence, the juvenile court imposed a seven-year prison term for the rape offense in Count 1, and a one-year prison term on each of the three gross sexual imposition offenses in Counts 6, 8, and 9. The juvenile court ordered the prison terms to run consecutively for a total term of ten years. The juvenile court stayed the adult portion of J.G.'s sentence "pending the successful completion of the Traditional Juvenile Dispositions ordered pursuant to Chapter 2152." (Feb. 5, 2020 JE at 6). In its judgment entry journalizing its disposition and sentence, the juvenile court noted, over the objection of defense counsel, that a separate restitution hearing would be held at a later date.

{¶7} J.G. subsequently filed a notice of appeal from the juvenile court's February 5, 2020 Judgment Entry. This Court dismissed the appeal, finding that the judgment was not a final appealable order under R.C. 2505.02 due to the fact that

-4-

the dispositional sentence was incomplete because the issue of restitution was held in abeyance. *In re J.G.*, 3d Dist. No. 8-20-02 (May 3, 2020), citing *In re Holmes*, 70 Ohio App.2d 75 (1980).

{¶8} On July 20, 2020, the State filed a motion for restitution requesting that the juvenile court order restitution relating to the cost of counseling fees for K.G., one of the victims, in the amount of $707.40, and lost wages in the amount of $2,640.00 incurred by the father of B.D., another victim in the case, when he missed work to assist in the police investigation, to attend court hearings, and to cope with the family's emotional trauma as a consequence of J.G.'s commission of the offense. The State asserted that these victims were entitled to restitution under Marsy's Law, a constitutional amendment expanding the rights accorded to victims of crime. The State attached documents submitted by the victims to establish the economic loss incurred, which included an invoice from K.G.'s therapist and a letter from the employer of B.D.'s father.

{¶9} J.G. filed an objection to the State's motion for restitution, arguing that the juvenile court lacked jurisdiction to order restitution once J.G. began treatment at the residential facility. J.G. also specifically objected to the restitution request of B.D.'s father, asserting that he was not a victim of the crime and that his request for restitution was not limited to any actual loss or damage, as he appeared to seek lost wages for the entire day when the hearings only lasted an hour or less. J.G.

acknowledged that K.G. could be entitled to restitution for counseling fees, assuming the matter of jurisdiction was not at issue, but argued that any restitution should be limited to actual out-of-pocket expenses incurred and not the portion of the fees covered by an insurance provider.

{¶10} On July 27, 2020, the juvenile court conducted a hearing on restitution. After hearing the arguments of counsel, the juvenile court took the matter under advisement. No further evidence was submitted at the hearing.

{¶11} On August 3, 2020, the juvenile court issued a judgment entry finding the counseling costs incurred by K.G.'s family to be a direct and proximate result of J.G.'s commission of the offenses and ordered restitution to K.G.'s family in the amount of $707.40. The juvenile court also found that the lost wages of B.D.'s father were a direct and proximate cause of J.G.'s commission of the offense. The juvenile court ordered the following with respect to this claim for restitution:

> **Therefore the juvenile [J.G.] <u>SHALL REIMBURSE B.D.'s father in the amount requested of $2,640.00</u> *PROVIDED* that victim's father submit proof of his hourly rate or method of compensation to Officer Beightler <u>on or before close of business of August 31, 2020</u>. The verification of income constitutes competent and credible evidence allowing this Court to discern the amount requested to a reasonable degree of certainty. P.O. Beightler SHALL REPORT back to the Court regarding B.D.'s pay stub or other satisfactory form of pay rate verification. A follow-up order will [be] issued accordingly that will conclude the restitution portion of the disposition in its entirety.**

(Aug. 3, 2020 JE at 2) (emphasis in original).

{¶12} On August 31, 2020, J.G. filed an "Objection to the Restitution Order for the Father of B.D. Filed by the Court on August 3, 2020," arguing that allowing the State to put on additional evidence supporting the claim for restitution without a hearing violated his right to due process. The same day, supplemental paperwork attempting to verify the income of B.D.'s father was submitted to the court.

{¶13} On October 6, 2020, the juvenile court issued a Final Judgment Entry on Restitution, noting that the "[f]amily of B.D. did not provide a paystub or other satisfactory form of pay rate verification which was a required condition to be awarded restitution. Therefore, the court finds that the information supplied does not establish, to a reasonable degree of certainty, the amount of restitution that may be due and owing." (Oct. 6, 2020 JE). Consequently, the juvenile court ordered that J.G. did not owe restitution for the lost wages of B.D.'s father. However, the juvenile court reiterated its previous restitution order of $707.40 owed to K.G.'s family for her counseling fees.

{¶14} It is from this judgment entry that J.G. now appeals, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED APPELLANT TO A BLENDED SENTENCE UNDER OHIO REVISED CODE SECTION 2151.13(D)(2)(A)(i) WITHOUT MAKING THE APPROPRIATE FINDINGS.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED WHEN IT ORDERED RESTITUTION IN THE MATTER AS IT LOST JURISDICTION WHEN IT FAILED TO ORDER RESTITUTION IN ITS ENTRY FILED FEBRUARY 5, 2020.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ERRED IN ORDERING RESTITUTION TO K.G.'S FAMILY IN THE AMOUNT OF $707.40 AS THE JUVENILE COURT DID NOT HAVE ANY EVIDENCE BEFORE IT TO MAKE THAT DETERMINATION.**

{¶15} The prosecution also filed a cross-appeal from the same judgment entry, asserting the following cross-assignment of error.

**CROSS-ASSIGNMENT OF ERROR**

**THE JUVENILE COURT ERRED IN NOT MAKING A FINDING AND ORDER OF RESTITUTION FOR B.D.**

*First Assignment of Error*

{¶16} In his first assignment of error, J.G. argues that the trial court erred by imposing a discretionary SYO dispositional sentence. Specifically, J.G. argues that the record does not support the juvenile court's conclusion that the resources within juvenile system alone were not adequate to rehabilitate him.

*Standard of Review*

{¶17} "Ohio has long recognized that juvenile proceedings are not criminal in nature and the juvenile system must focus on the child's welfare." *State v. Penrod*, 62 Ohio App.3d 720, 722 (9th Dist. 1989). While the general objective of

-8-

the juvenile system is rehabilitation rather than punishment, the juvenile justice system may contain punitive elements. *In re Woodson*, 98 Ohio App.3d 678, 682 (10th Dist. 1994). We will reverse the juvenile court's judgment only if it abused that discretion. *In re Strum*, 4th Dist. Washington No. 05CA35, 2006-Ohio-7101, ¶ 63. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

*Legal Authority*

{¶18} The Supreme Court of Ohio has explained the serious youthful offender statutory scheme as follows:

> **A juvenile charged as a potential serious youthful offender does not face bindover to an adult court; the case remains in the juvenile court. Under R.C. 2152.11(A), a juvenile defendant who commits certain acts is eligible for "a more restrictive disposition." That "more restricted disposition" is a "serious youthful offender" disposition and includes what is known as a blended sentence—a traditional juvenile disposition coupled with the imposition of a stayed adult sentence. R.C. 2152.13. The adult sentence remains stayed unless the juvenile fails to successfully complete his or her traditional juvenile disposition. R.C. 2152.13(D)(2)(a)(iii). Theoretically, the threat of the imposition of an adult sentence encourages a juvenile's cooperation in his own rehabilitation, functioning as both carrot and stick.**

*State v. D.H.*, 120 Ohio St. 3d 540, 2009-Ohio-9, ¶ 18.

{¶19} Only further bad acts by the juvenile as he is rehabilitated in the juvenile system can cause the stayed adult penalty to be invoked:

> **Any adult sentence that the trial court imposes through R.C. 2152.13(D)(2)(a)(i) is only a potential sentence—it is stayed**

**pursuant to R.C. 2152.13(D)(2)(a)(iii) "pending the successful completion of the traditional juvenile dispositions imposed." R.C. 2152.13(D)(2)(a)(ii) requires the court to impose a juvenile disposition when it imposes an adult sentence; how the juvenile responds to that disposition will determine whether the stay is lifted on the adult sentence.**

*Id.* at ¶ 30.

{¶20} In the instant case, the juvenile court found J.G. to be a serious youthful offender pursuant to R.C. 2152.13(D)(2)(a), which governs a juvenile court's discretion to impose a blended sentence on a serious youthful offender and states:

**If a child is adjudicated a delinquent child for committing an act under circumstances that allow, but do not require, the juvenile court to impose on the child a serious youthful offender dispositional sentence under section 2152.11 of the Revised Code, all of the following apply:**

**(i)    If the juvenile court on the record makes a finding that, given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met, the juvenile court may impose upon the child a sentence available for the violation, as if the child were an adult, under Chapter 2929. of the Revised Code, except that the juvenile court shall not impose on the child a sentence of death or life imprisonment without parole.**

**(ii)   If a sentence is imposed under division (D)(2)(a)(i) of this section, the juvenile court also shall impose upon the child one or more traditional juvenile dispositions under**

**sections 2152.16, 2152.19, and 2152.20 and, if applicable, section 2152.17 of the Revised Code.**

**(iii) The juvenile court shall stay the adult portion of the serious youthful offender dispositional sentence pending the successful completion of the traditional juvenile dispositions imposed.**

{¶21} Revised Code section 2152.01, referenced in R.C. 2152.13(D)(2)(a), sets forth the purposes for juvenile dispositions and provides, in relevant part:

**(A) The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. * * ***

{¶22} Accordingly, R.C. 2152.13(D)(2)(a) sets out a three-tiered process a court must follow once a minor is adjudicated delinquent under circumstances that allow, but do not require, a blended juvenile/adult SYO dispositional sentence; to wit: (1) the court must make findings that, given the circumstances of the case, the juvenile system is not adequate to meet the purposes in R.C. 2152.01; (2) once the court makes those findings, then it may impose an adult sentence along with one or more traditional juvenile dispositions; and (3) after exercising its discretion, and imposing a blended sentence, the court must stay the adult portion pending successful completion of the traditional juvenile disposition. *See In re T.D.R.*, 11th Dist. Lake No. 2014-L-109, 2015-Ohio-3541, ¶ 17. Moreover, pursuant to R.C. 2152.13(D)(3), a child upon whom a serious youthful offender dispositional

sentence has been imposed has a right to appeal the adult portion of the serious youthful offender dispositional sentence as if the adult portion were not stayed.

**{¶23}** In its judgment entry imposing the blended sentence the trial court stated the following regarding the SYO sentence:

> **The Court FINDS that pursuant to Ohio Revised Code § 2152.13(D)(2)(a)(i) the nature and circumstances of the violation and the history of the child, the length of time, level of security, and of programming and resources available in the juvenile justice system alone are not adequate to provide a reasonable expectation that the purposes set forth in Ohio Revised Code § 2152.01 will be met and elects to impose a Serious Youthful Offender disposition. The Court has considered the record, oral statements, reports and evaluations, as well as the principles and purposes of sentencing under Ohio Revised Code § 2929.11, and has balanced the seriousness and recidivism factors of Ohio Revised Code§ 2929.12.**

(Feb. 5, 2020 JE at 5).

*Discussion*

**{¶24}** On appeal, J.G. argues that the trial court abused its discretion in imposing the discretionary SYO dispositional sentence because it failed to discuss specific facts supporting its conclusion that the statutory factors had been met. Specifically, J.G. asserts that the trial court failed to engage in the proper statutory analysis. J.G. also contends that the record does not support the trial court's decision to impose a blended sentence.

**{¶25}** At the outset we note the record confirms that the trial court made the necessary statutory findings to impose a discretionary SYO dispositional sentence

upon J.G. under R.C. 2152.13(D)(2)(a)(i), and there is no requirement that the trial court make any additional findings under the statute.[1]  Therefore, we find no merit to J.G.'s argument that the trial court failed to engage in the proper statutory analysis.

{¶26} Next, we turn to J.G.'s claim that the trial court's decision to impose a blended sentence is not supported by the record.  In particular, J.G. asserts that the trial court failed to give adequate consideration to his autism diagnosis and other indicators that suggested the resources of the juvenile system could adequately rehabilitate him without the imposition of a SYO dispositional sentence.

{¶27} At the dispositional hearing, J.G. presented the testimony of Dr. Barbara Bergman, a psychologist who evaluated his amenability to treatment in the juvenile system.  Dr. Bergman testified to her findings in her report that indicated J.G. presented a low risk of dangerousness and alluded to indications that J.G. may be autistic.  However, Dr. Bergman clarified that she only performed a screening test on J.G. for Autistic Spectrum Disorder ("ASD"), and noted "a much more thorough evaluation should be done by an expert in that area, and that was

---

[1] *In re Sevolt*, the case relied upon by J.G. to support his contention on appeal that trial court is required to make additional findings, is distinguishable from the case sub judice, as the juvenile court in that case failed to make *any* statutory findings.  *In re Sevolt*, 5th Dist. Marrow Nos. 2006-CA-0010, 2006-CA-0011, 2007-Ohio-2812 (stating that "[a]lthough the court may well have had information relative to the factors in R.C. 2152.13(D)(2)(a)(i) and R.C. 2151.02 within the pre-sentence investigation report and a predisposition investigation report, the court did not discuss the 'nature and circumstances of the violation and the history of the child, the length of time, level of security, and [whether the] types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met' ").  Here, the juvenile court made the requisite statutory finding verbatim in its February 5, 2020 Judgment Entry.

subsequently done at Nationwide Children's Hospital." (Disp. Hrg. Trans. at 39).

Notably, Dr. David Michalec, a psychologist with Nationwide Children's Hospital

whose report was admitted as an exhibit at the dispositional hearing, diagnosed J.G.

with "ASD, without any accompanying language and cognitive impairment, level

one." (Michalec Report at 5). Dr. Bergman explained that this diagnosis is

consistent with "high-functioning autism." (Disp. Hrg. Trans. at 39). Both Dr.

Bergman and Dr. Michalec observed that J.G. did not have any cognitive or

intellectual limitations or learning delays with this diagnosis, but instead the ASD

appeared to affect J.G. on social and behavioral levels.[2]

{¶28} Both of the psychologists' reports observed that J.G. preferred to be

alone, had difficulty interacting with children his own age, and was more

comfortable in the company of older adults. This resulted in situations in the past

in which J.G. would appoint himself as the teacher's or the playground monitor's

"helper," by assisting in the enforcement of the classroom rules or by tattling on

other children to the supervising adult. Incidentally, J.G. continued to demonstrate

these tendencies in juvenile detention. It was reported that J.G. preferred to interact

with the guards and struggled socially with his peers, which presented a threat to his

physical safety while in detention.

---

[2] Dr. Michalec reported J.G.'s IQ to be in the "solidly average range." (Michelac Report at 4).

{¶29} The record further indicates that J.G. had previously been diagnosed with attention deficit disorder ("ADD"), which affected his ability to perform well academically. J.G. had been prescribed medication for ADD, but was not taking it on regular basis. Dr. Bergman testified that there are many juvenile sex offender treatment programs designed to work with youths who have developmental disabilities. She opined from her evaluation that J.G. is amenable to treatment like this in the juvenile system. Specifically, Dr. Bergman stated that a residential treatment facility with this particular program would likely benefit J.G. However, she expressed concern with J.G.'s lack of compliance with taking his ADD medication as prescribed and explained that he would have difficulty successfully completing the program if his ADD is not controlled.

{¶30} With regard to the nature and circumstances of the offenses in the underlying case, J.G. considered himself the school bus driver's "unofficial helper" and elected to sit with the elementary school-aged girls in the front of the bus instead of in the back with his peers. J.G. tasked himself with assisting the bus driver in keeping the little girls quiet, calm, and entertained for the duration of the bus ride. The Sex Offender Risk Assessment ("SORA") completed by Therapist Robert Hayes indicated that J.G.'s interactions with these girls started with tickling the victims before progressing to inappropriate sexual conduct/contact.

{¶31} This conduct began in May 2018 with five-year-old K.G., whom he fondled about her vaginal area over her clothes. J.G. admitted that after this first incident he knew he had done something wrong. Nevertheless, J.G.'s inappropriate conduct with K.G. escalated when the school year resumed in August 2018 to include putting his hands under K.G.'s clothes to touch and insert his fingers into her vagina. J.G. also exposed his erect penis to K.G. and asked her to touch it on two occasions. J.G. admitted that after each incident the thought that he had done something wrong entered his mind. J.G. also admitted to engaging in sexual contact with three other young girls on the bus between August and October 2018. This contact included tickling the girls on their inner thighs and other parts of their bodies. J.G. disclosed to Therapist Hayes that he had accessed and masturbated to pornography since the age of 13 and that he used sex/pornography as a way to cope with his anxiety and stress.

{¶32} Therapist Hayes determined in the SORA that J.G. presented a moderate risk of reoffending due to his frequent use of pornography and masturbation as a coping mechanism, the nature and circumstances of the underlying sex offenses victimizing significantly younger girls, and his social isolation, avoidance of his peers, and preference to interact with older adults. Hayes further recommended that J.G. be placed in a secured residential facility where he could receive intensive treatment for youth who engage in sexually abusive

behaviors, be given consistent supervision, and learn more appropriate social interaction skills and effective coping mechanisms to help him better handle perceived stressors.

{¶33} Based on the foregoing, we conclude that the juvenile court did not abuse its discretion in imposing a SYO dispositional sentence upon J.G. The record demonstrates that the juvenile court considered all of the factors in R.C. 2152.13(D)(2)(a)(i) and concluded that the programming and resources available in the juvenile justice system alone were not adequate to rehabilitate him. Specifically the juvenile court stated at the dispositional hearing that it reached this conclusion based upon the nature of the offenses—highlighting J.G.'s breach of trust with not only the victims, but also with the bus driver and the school district—and his social and behavioral issues of avoiding his peers and using sex to cope with negative emotions. Accordingly, because the record indicates the juvenile court evaluated each of the elements contained in the statute, we conclude that the trial court did not abuse its discretion in imposing a blended sentence upon J.G.

{¶34} The first assignment of error is therefore overruled.

*Second Assignment of Error*

{¶35} In his second assignment of error, J.G. argues that the juvenile court lost jurisdiction to order restitution after it had imposed the blended sentence and J.G. began treatment at the juvenile residential facility following the January 28,

2020 dispositional hearing. Notably, although the juvenile court informed the parties at the dispositional hearing that restitution would be ordered in the case at a later time, the final determination on the restitution issue was not resolved by the juvenile court until October 6, 2020.

{¶36} Initially, we note that J.G. made a similar argument to this Court, prior to filing this appeal, when he appealed the February 5, 2020 Judgment Entry. Specifically, J.G. contended that the juvenile court was required to "reserve" jurisdiction to later address the restitution matter and that because it failed to do so jurisdiction to order restitution was "lost." We noted in our judgment entry dismissing J.G.'s appeal of the February 5, 2020 Judgment Entry that "[c]ontrary to the assertion of Appellant, the trial court did not need to retain jurisdiction to rule on restitution. Rather, the trial court need only indicate that the matter of disposition is not complete and future hearing is necessary to make final determination." *In re J.G.*, 3d Dist. No. 8-20-02 (May 3, 2020), citing *In re Holmes*, 70 Ohio App.2d 75 (1980). Notably, the juvenile court did precisely this in its February 5, 2020 Judgment Entry.

{¶37} Nevertheless, in claiming error on appeal, J.G. compares this case to other adult felony sentencing cases. However, we find J.G.'s reliance on these cases inapt to this juvenile matter. For instance, J.G. cites our prior case authority for the propositions that a court has no authority to reconsider its own valid final judgments

in criminal cases and that once execution of a sentence commences, the trial court may not amend the sentence to increase the punishment. *State v. Dillon*, 3d Dist. Hancock No. 5-06-50, 2007-Ohio-4934, ¶ 11, citing *State ex rel. Hansen v. Reed*, 63 Ohio St.3d 597, 599 (1992) and *State v. Cockersham*, 118 Ohio App.3d 767, 770 (10th Dist.1997). In *Dillon*, the trial court modified the amount of restitution ten years after it had originally imposed it as part of Dillon's sentence *and* after Dillon's probation relating to his sentence had been terminated. We concluded in *Dillon* that the trial court erred in "ordering restitution in an amount greater than ordered at the time of Dillon's sentencing and at the time his probation was terminated." *Dillon*, 2007-Ohio-4934 at ¶ 16. In *State v. Bell*, another case relied upon by J.G. on appeal, the Tenth Appellate District determined that a trial court did not have jurisdiction to hold a restitution hearing and order restitution after it had issued a final sentencing judgment entry that "did not allude to the possibility of restitution or mention that a restitution hearing was pending." *State v. Bell*, 10th Dist. Franklin No. 03AP-1282, 2004-Ohio-5256, ¶ 4.

{¶38} We find these cases distinguishable from the instant case. As already discussed, the juvenile court's February 5, 2020 Judgement Entry pronouncing the imposition of a blended sentence and holding in abeyance the issue of restitution was not a final appealable order under R.C. 2505.02 because the disposition was incomplete. Unlike the adult felony sentencing cases relied upon by J.G., the

juvenile court never "lost" jurisdiction to resolve the restitution matter because the February 5, 2020 Judgment Entry of Disposition and Sentence was not a final appealable order. Therefore, the juvenile court in this instance did not erroneously revisit a final judgment, but rather properly exercised jurisdiction to address a pending matter and issue a final judgment completing its disposition of the case. *See In re D.W.*, 10th Dist. Franklin No. 16AP-179, 2016-Ohio-8535, ¶ 7 (specifically rejecting the juvenile's argument that the juvenile court lacked jurisdiction to consider the state's motion to exercise continuing jurisdiction for requesting additional restitution and noting that the juvenile court placed the juvenile on court-ordered probation subject to certain terms and conditions. Once court-ordered probation is imposed, the juvenile court retains jurisdiction over the child, so long as the order itself remains in effect.)

{¶39} Moreover, because the February 5, 2020 Judgment Entry did not constitute a final appealable order, J.G. had no expectation of finality from that judgment since it was clearly established on the record at the dispositional hearing and in February 5, 2020 Judgment Entry that the juvenile court intended to complete the matter of restitution at a later time. *See State v. Shenefield*, 122 Ohio App.3d 475 (1997) (concluding that the defendant did not have an expectation of finality from the original sentencing entry when trial court's original sentencing entry did

not set forth a definite amount of restitution and the court notified the defendant that it would hold an evidentiary hearing to determine restitution).

{¶40} For all these reasons, we reject J.G.'s argument that the juvenile court lacked jurisdiction to hold a hearing and issue an order on restitution.

{¶41} Accordingly, the second assignment of error is overruled.

*Third Assignment of Error*

{¶42} In his third assignment of error, J.G. argues that the trial court erred in ordering him to pay restitution for K.G.'s counseling fees. Specifically, J.G. claims that the statement from K.G.'s counselor itemizing the fees was insufficient to establish the economic loss to K.G. J.G. asserts the State was required to present additional testimony or evidence to substantiate the restitution order.

{¶43} Revised Code section 2152.20(A)(3) authorizes a juvenile court to impose restitution in juvenile delinquency adjudications. The statute provides that the court may base the restitution order on "an amount recommended by the victim * * *, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and any other information * * *." *Id*. The amount of restitution "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the delinquent act * * *." *Id*.

{¶44} Economic loss is defined under R.C. 2152.02(K) as:

**[A]ny economic detriment suffered by a victim of a delinquent act
* * * as a direct and proximate result of the delinquent act * * ***

**and includes any loss of income due to lost time at work because of any injury caused to the victim and any property loss, medical cost, or funeral expense incurred as a result of the delinquent act * * *. 'Economic loss' does not include non-economic loss or any punitive or exemplary damages.**

{¶45} To impose restitution in a juvenile case, and ensure an offender due process, the record must contain sufficient evidence for the court to determine that the amount of restitution bears a reasonable relationship to the loss suffered. *In re T.C.*, 8th Dist. Cuyahoga No. 102632, 2015-Ohio-4384, ¶ 8. The amount of restitution must be supported by competent, credible evidence from which the court can ascertain the amount to a reasonable degree of certainty. *State v. Borders*, 12th Dist. Clermont No. CA2004-12-101, 2005-Ohio-4339, ¶ 36. Generally, courts review an order of restitution for an abuse of discretion. *In re A.S.*, 8th Dist. Cuyahoga No. 107202, 2019-Ohio-1362, ¶ 9.

{¶46} Here, the State filed a motion requesting restitution for the counseling fees K.G.'s family paid and attached a statement from the counseling center itemizing the dates K.G. attended and the cost per counseling session. The statement indicated that the total costs for the counseling sessions was $707.40. J.G. filed an objection to K.G.'s restitution request on the grounds that any restitution ordered must be limited to the actual economic loss and not include expenses covered by a third party insurer. At the restitution hearing held on July 27, 2020, the State clarified that the requested $707.40 was the amount not covered

by insurance and therefore constituted the family's out-of-pocket expense. J.G.'s counsel continued to object to the nature of the evidence submitted in support of this restitution request.

{¶47} We conclude that the juvenile court did not abuse its discretion in accepting the submitted counseling fees statement as competent, credible evidence from which it could ascertain the amount of economic loss to a reasonable degree of certainty, as it satisfied the character of the evidence described in R.C. 2152.20(A)(3). Contrary to J.G.'s assertion, the amount of economic loss was not required to be established by testimony or other documentary evidence from insurance agencies. *See e.g.*, *State v. Jones*, 10th Dist. No. 14AP-80, 2014-Ohio-3740, ¶ 23 (the evidence which supports a court's restitution order can take the form of either documentary evidence or testimony). *Accord State v. McClain*, 5th Dist. Licking No. 2010 CA 00039, 2010-Ohio-6413, ¶ 34 (observing that "R.C. 2929.18(A)(1) allows the trial court to rely upon the amount of restitution recommended by the victim, and does not require written documentation"); *In re T.C.* 8th Dist. Cuyahoga No. 102632, 2015-Ohio-4384, ¶ 8 (applying the analysis of R.C. 2929.18(A)(1), restitution in felony sentencing, to R.C. 2152.20(A)(3), restitution in juvenile dispositions, because "both statutes are identical in language and effect").

{¶48} Accordingly, on this basis the third assignment of error is overruled.

*Cross-Assignment of Error*

**{¶49}** In the cross-assignment of error, the State argues that the juvenile court erred when it failed to order restitution to B.D.'s father for lost wages. Specifically, the State challenges the juvenile court's determination that B.D.'s father failed to submit competent, credible evidence from which it could ascertain the amount of economic loss to a reasonable degree of certainty. The State further claims that the trial court's determination violates the due process rights accorded to B.D.'s father under Marsy's law.

*Legal Authority*

**{¶50}** By way of a background, Article I of Ohio's Constitution is commonly known as Ohio's Bill of Rights. Section 10a of that article was amended in 2017, effective February 5, 2018, to include Marsy's Law, which gives crime victims and their families meaningful and enforceable rights, including the right to restitution. Marsy's Law defines a victim as "a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act." Article I, Section 10a(D). It excludes from the definition any "person whom the court finds would not act in the best interest of a deceased, incompetent, minor, or incapacitated victim." *Id*. It does not define "person" or specify the type of harm that qualifies for restitution.

{¶51} Specifically pertaining to the considerations in the instant case, "Marsy's Law also does not provide a procedural mechanism for ordering restitution. It merely states that a victim may assert his or her constitutional rights in any proceeding involving the underlying criminal act." *City of Centerville v. Knab*, --- Ohio St.3d. ---, 2020-Ohio-5219, ¶ 18 citing Article I, Section 10a(B). However, as discussed in the third assignment of error, R.C. 2152.20(A)(3) authorizes a juvenile court to impose restitution in juvenile delinquency adjudications and provides a statutory mechanisms for ordering restitution in juvenile cases.

*Discussion*

{¶52} In the case sub judice, the State filed a motion for restitution seeking to reimburse the father of B.D. for wages lost in the amount $2,640.00 incurred as a result of him participating in the police investigation, attending court hearings, and coping with the family's emotional trauma. J.G. objected to the evidence submitted by the State on the basis that B.D.'s father was not a victim of the offense and that the evidence did not reflect the actual time B.D.'s father missed work, but instead only noted the days he was absent from work. The juvenile court determined that the lost wages of B.D.'s father were a direct and proximate cause of J.G.'s commission of the offense and that B.D.'s father was entitled to restitution. Notably, J.G. did not assign error to this finding by the juvenile court on appeal.

Accordingly, we decline to make any specific determination regarding the propriety of the trial court's finding in this regard.

{¶53} This notwithstanding, the juvenile court determined the evidence submitted was insufficient to ascertain the economic loss due to lost wages to a reasonable degree of certainty and ordered B.D.'s father to submit supplemental evidence verifying his hourly rate or method of compensation. Specifically, the juvenile court ordered B.D.'s father to submit a "pay stub or other satisfactory form of pay rate verification." (Aug. 3, 2020 JE at 2). Even though B.D.'s father later submitted supplemental evidence, it did not comport with the juvenile court's order and the juvenile court found the supplemental evidence unsatisfactory to establish the economic loss to a reasonable degree of certainty. The juvenile court stated the following in its October 6, 2020 Judgment Entry:

> **On August 3, 2020, the Court made a final ruling on restitution as it relates to K.G.'s family. However, the ruling as to B.D.'s family for Father's lost wages was conditioned upon Father verifying his income by providing competent and credible evidence to Probation Officer Beightler allowing this Court to discern the amount requested to a reasonable degree of certainty.**
>
> **Family of B.D. has provided cover letters from [B.D.'s father's employer] along with tax records. The Court cannot be expected to study tax returns and draw conclusions without additional information. The best evidence is to provide a financial record to show the amount of wages paid. Family of B.D. did not provide a paystub or other satisfactory form of pay rate verification which was a required condition to be awarded restitution.**

> **Therefore, the Court FINDS that the information supplied does not establish, to a reasonable degree of certainty, the amount of restitution that may be due and owing.**
>
> **Therefore, it is HEREBY ORDERED that no restitution is owed by Juvenile [J.G.] to the family of B.D. However, [J.G.] is still ordered to reimburse K.G.'s family as previously ordered.**

(Oct. 6, 2020 JE).

{¶54} As already discussed in the third assignment of error, an award of restitution is limited to the actual loss caused by the offender's commission of the offense, and there must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty. Indeed, "[a] trial court commits plain error in awarding restitution that is not supported by competent, credible evidence." *Grove City v. Sample*, 10th Dist. Franklin No. 18AP-30, 2018-Ohio-4619, ¶ 24. *Accord State v. Legrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 10.

{¶55} In this instance, the juvenile court provided B.D.'s father with ample opportunity to substantiate the amount of his economic loss. The record supports the trial court's conclusion that B.D.'s father failed to corroborate his restitution request with competent, credible evidence from which the court could ascertain the amount of restitution to a reasonable degree of certainty. In other words, we conclude the record demonstrates that the juvenile court adequately accorded B.D.'s father due process to seek his restitution request, but that B.D.'s father failed to

submit the necessary evidence to authorize the juvenile court to order the restitution. Accordingly, we do not find that the trial court abused its discretion when it decided not to order restitution to B.D.'s father.

{¶56} Therefore, we overrule the State's cross-assignment of error.

{¶57} Based on the foregoing, J.G.'s assignments of error are overruled and the State's cross-assignment of error is also overruled. The judgment of the Logan County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlr**